| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>UNITED STATES OF AMERICA,<br><br>                          -against-<br><br>CARY ANTHONY YOUNG,<br><br>                                              Defendant.<br>------------------------------------------------------------------------X | For Online Publication Only<br><br><br><br>**ORDER**<br>22-CR-67 (JMA)<br><br><br><br> |

FILED
CLERK
4:06 pm, Jun 16, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, District Judge:**

Before the Court is the motion of Defendant Cary Anthony Young ("Defendant") to dismiss the single-count indictment brought against him, pursuant to Federal Rule of Criminal Procedure 12 and 8 U.S.C. § 1326(d).  (ECF No. 20.)  For the following reasons, Defendant's motion to dismiss is GRANTED, and the indictment is DISMISSED.

### I.     BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and only discusses those facts insofar as they are relevant to the instant motion.

**A.     Defendant's Immigration Background and New York State Criminal History**

Defendant was born in Jamaica in 1971 and immigrated to the United States as a lawful permanent resident at the age of four along with his mother.  (Declaration of Cary Anthony Young ("Young Decl."), ECF No. 20-3, ¶ 3.)[1]  Defendant and his mother initially settled on Long Island, near relatives.  (Id. ¶ 4.)  Defendant attended school and began working various retail jobs after school beginning around the age of fifteen.  (Id. ¶ 5.)  Around eleventh grade, Defendant began

---

[1] As the Government does not dispute the factual assertions set forth in Defendant's declaration – which the Court notes also supports undisputed facts of the underlying removal proceedings – the Court accepts and credits Defendant's declaration.

1

spending time with cousins who were into the "street life," including selling drugs; he stopped going to school and did not graduate. (Id. ¶ 6.) Defendant was arrested in 1988 and 1989 (at ages seventeen and eighteen, respectively) – both cases were resolved with "Youthful Offender" adjudications and sealed. (See Declaration of S. Isaac Wheeler ("Wheeler Decl."), ECF No. 20-2, ¶ 7.) Defendant's criminal history reflects an escalating series of arrests and convictions in his twenties. Of relevance to Defendant's instant motion:

- 1994 – Defendant pled guilty to: (1) Criminal Possession of a Weapon in the Fourth Degree (a misdemeanor), in violation of N.Y. Penal L. § 265.01(1); and (2) Unlawful Possession of Marijuana (a violation), in violation of N.Y. Penal L. § 221.05, for which he was sentenced to ten days of incarceration;

- 1994 – Defendant pled guilty to Attempted Criminal Sale of a Controlled Substance (a felony), in violation of N.Y. Penal L. §§ 110 and 220.39 and received six months' incarceration followed by probation;

- 1999 – Defendant pled guilty to Criminal Possession of a Controlled Substance in the Seventh Degree (a misdemeanor), in violation of N.Y. Penal L. § 220.03, and was sentenced to 90 days of incarceration; and

- 2002 – Defendant pled guilty to Attempted Criminal Possession of a Weapon in the Third Degree (a felony), in violation of N.Y. Penal L. §§ 110 and 265.02 and was sentenced to one-and-a-half to three years of incarceration.

(Wheeler Decl. ¶ 6; Ex. C (conviction records) at 45-79).

Around this time, Defendant met and married his wife, Mary Innocent, a U.S. citizen. (Young Decl. ¶ 8.) They have two children together (born 1996 and 1997, respectively) and Defendant is the stepfather to his wife's other son (born 1991). (Id.)

B.  **Defendant's Pre-Removal Hearing Proceedings**

In August 2003, while Defendant was incarcerated for his 2002 weapons offense, Immigration and Customs Enforcement ("ICE") prepared a Form I-862 "Notice to Appear"

2

("NTA")[2] charging that he was removable from the United States. (See ECF No. 20-3 (Notice to Appear).) The NTA contained a single charge of removability, alleging, based on Defendant's 2002 weapon conviction, that he was deportable under 8 U.S.C. § 1227(a)(2)(C), for having been "convicted under the law of…possessing…any weapon, part or accessory which is a firearm or destructive device," as defined in 18 U.S.C. § 921(a). (Id.) Defendant was informed by a facility staff member that he would be subject to an ICE hold and that upon completion of his sentence he would be transferred to ICE custody instead of being released. (Young Decl. A ¶ 9.) Defendant's wife retained a New York-based immigration attorney, Pearline Blackwood, who visited Defendant and apparently advised him that she believed she could contest his removal. (Id. ¶ 10.) Ms. Blackwood further advised Defendant that he was eligible for release on immigration bond during the removal contest. (Id.)

ICE took custody of Defendant at the end of his sentence, in September 2003. (See ECF No. 20-4 at 4.) According to Defendant, he was separated into a group of inmates who were bound for ICE detention facilities located on the southern border, based on the severity of their prior criminal convictions. (See Young Decl. ¶ 11.) Defendant was transferred to a series of jail facilities in North Carolina and Alabama, finally landing at Etowah County Jail in Alabama on October 1, 2003. (Id. ¶ 12; see also ECF No. 20-4 at 38.)

On or about September 24, 2003, while Defendant was detained in North Carolina, Ms. Blackwood filed a motion for a bond hearing with the Atlanta, Georgia[3] immigration court. (ECF

---

[2] An NTA is the case-initiating document for a removal proceeding in an immigration court, akin to a criminal complaint or indictment. See Niz-Chavez v. Garland, 141 S. Ct. 1474, 1482 (2021).

[3] It is unclear why Ms. Blackwood sought a hearing from the Atlanta immigration court, when her then-client (Defendant) was detained in North Carolina.

3

No. 20-4 at 6-12.) Ms. Blackwood argued that Defendant was eligible for release on bond during the pendency of his removal proceedings and that he was "statutorily eligible for relief [from deportation] through cancellation of removal" and possibly for other forms of relief. (Id.)

### C. Defendant's Removal Hearings

A hearing was conducted on September 30, 2003; Ms. Blackwood attended the hearing but waived Defendant's appearance, as he was then detained in North Carolina. (Id. at 16.) During the hearing, the immigration judge ("IJ") rejected Ms. Blackwood's arguments in favor of bond and found that he lacked jurisdiction to set bond because Defendant was subject to mandatory detention under 8 U.S.C. § 1226(c). (Id. at 16, 19.) The parties and the IJ discussed Defendant's possible eligibility for relief from removal. The IJ noted, among other things, that a proposed deportation waiver would not waive the "gun charge" Defendant faced in the immigration proceeding but posited that Defendant could be eligible for a different form of relief. (Wheeler Decl., Ex. H at 00:19-01:14.) The case was reset to October 17, 2003, for Ms. Blackwood to investigate these possibilities, with the IJ advising her that "I think you may have some other difficulties, OK?" (Id. at 01:40.)

Defendant appeared at the October 17 hearing. At the hearing, Ms. Blackwood conceded that Defendant was deportable as charged by the NTA, for a "firearms" offense. (Id. at 02:34-02:50; Young Decl. ¶ 13.) At the hearing, the IJ noted that Ms. Blackwood sought the relief of "cancellation of removal" on Defendant's behalf, see 8 U.S.C. § 1229b(a), while the government intended to oppose the application, believing him statutorily ineligible for cancellation. (See Wheeler Decl., Ex. H at 02:50-03:04.) During this exchange, the IJ focused on the ICE attorney's representation that Defendant had a drug conviction, which allegedly constituted an "aggravated felony" that rendered "cancellation" relief unavailable. (Id. at 03:38-03:50.) The IJ further

4

reminded Ms. Blackwood that, regardless of whether the NTA formally alleged that Defendant had an "aggravated felony" conviction, he bore the burden of establishing statutory eligibility for any requested relief, and therefore needed to show that he did not have such a disqualifying conviction. (Id. at 04:27-05:14; see generally 8 U.S.C. § 1229a(c)(4)(A) (noncitizen's burden to establish statutory eligibility for relief from removal).) The IJ adjourned the hearing for another month, instructed Ms. Blackwood to file any relief applications before that date, and instructed ICE to serve her with any amended charges of removability before the next hearing. (Wheeler Decl., Ex. H at 05:14-06:45). The IJ addressed Defendant directly:

> Mr. Young, the government has—has some things, all I hear is what they're telling me. I don't see them. So if they don't serve it on me, then I don't know that it exists. However, if it does exist, you would—it appears you're not eligible for [cancellation] relief. The government doesn't have to amend the charges in order to preclude you from filing that…. You're deportable on this [firearm] charge only. The government doesn't need to file every, every charge against you. They only need to deport you once. They don't have to deport you on five different charges…. If in fact the case bears out that you have an aggravated felony drug charge, that's not going to be waived. That'll preclude you from cancellation and 212(c) relief. Alright? However, I don't have enough sufficient to render a decision today telling that you're precluded from that. But if what the government says is true, and if what I am hearing from your attorney is true, it's likely that I will then issue an order returning you to Jamaica. OK? All right.

(Id. at 07:30-08:34.)

The IJ further advised Defendant that "if [he] just want[ed] to go home," he could stipulate to his removal, but that otherwise the IJ would consider Ms. Blackwood's argument for relief. (Id. at 08:35-09:03.) The IJ repeated that, "if what the government's telling me is true, that you have this felony drug conviction, then her argument fails. Ok?…. If it's shown, then I can't do anything to help you." (Id. at 09:04-09:17.) He also advised Defendant of the right to appeal to the BIA, but that such an appeal might take six months or longer. (Id. at 09:42-09:54.) Believing that he did have a "drug felony," which would preclude all discretionary relief from removal, as

5

repeatedly alluded to by the IJ, Defendant concluded that the IJ's view that there was no available relief was correct. (Young Decl. ¶ 14.)

On or about November 3, 2003, counsel for ICE prepared an amendment to the NTA adding additional charges of removability. (ECF No. 20-3 at 22.) The amended NTA repeated the allegation regarding the 2002 weapon offense, but further alleged that the conviction was for "Attempted Criminal Possession of a Weapon by a felon." (Id.) The amended NTA added allegations concerning Defendant's prior firearms and drug trafficking convictions. (Id.) The amended NTA charged that Defendant was deportable on two grounds not specified in the original NTA, specifically "aggravated felony" convictions under: (1) 8 U.S.C. §§ 1101(a)(43)(B) and (U) (relating to attempts to commit "drug trafficking crimes"); and (2) 8 U.S.C. §§ 1101(a)(43)(E)(ii) and (U) (relating to offenses "described in" 18 U.S.C. § 922(g)(1)-(5).). (Id.)

Defendant was unable to communicate with Ms. Blackwood between or during court appearances but learned from his wife that Ms. Blackwood had told her that the only thing she could do to help him at that point was to expedite his removal by sending ICE Jamaican identity documents such as a birth certificate. (Young Decl. ¶¶ 15, 20, 21.) Defendant received no advice from Ms. Blackwood regarding an appeal or any further review, but from the IJ's explanations at the October hearing, he understood that any such appeal would be unsuccessful and would prolong his pre-deportation detainment, given his prior felony drug conviction. (Id. ¶ 21.) Ms. Blackwood did not suggest to Defendant that his drug felony conviction and weapon felony were not "aggravated felonies" as ICE had alleged. (Id. ¶ 19.)

Defendant's third and final hearing was conducted on November 18, 2003. Wheeler Decl., Ex. H at 10:49.) Defendant and Ms. Blackwood both appeared by telephone. (Id.) Ms. Blackwood initially admitted the amended NTA's new factual allegations and conceded that

6

Defendant was deportable on both newly specified "aggravated felony" grounds. (Id. at 11:20-11:25.) The IJ inquired regarding the relief sought by Defendant, to which Ms. Blackwood responded: "At this time, there's no form of relief, judge." (Id. at 11:27.) The IJ found that Defendant was "properly charged" under the original and amended NTAs and entered an order of removal to Jamaica. (Id. at 11:47-12:07.) Ms. Blackwood waived appeal, and the IJ secured Defendant's acceptance of the order as "final" after advising him of his appeal right. (Id. at 12:24-12:35; Young Decl. ¶ 21.) Defendant was removed to Jamaica on or about April 29, 2004. (ECF No. 20-4 at 22-23.) He was found again in the United States in or about November 2006 and was again removed to Jamaica on or about February 3, 2007.[4] (Id. at 25-27.)

### D. Defendant's Post-Removal History and Instant Motion

Defendant was once again found in the United States on or about February 3, 2021 and thereafter arrested. (See ECF No. 1.) On or about February 16, 2022. Defendant was charged with a single count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). (Id.) On January 31, 2023, Defendant moved to dismiss the indictment, pursuant to Federal Rule of Criminal Procedure 12 and 8 U.S.C. § 1326(d). (ECF No. 20.) The Government responded on April 24, 2023. (ECF No. 24.) Defendant filed a reply on May 11, 2023. (ECF No. 26.)

## II.  DISCUSSION

### A.  Challenges to A Deportation Order Pursuant to 8 U.S.C. § 1326

A defendant may move to dismiss an indictment due to a defect, such as failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "An element of the offense of illegal reentry after deportation or removal in violation of 8 U.S.C. § 1326 is that the defendant was previously

---

[4] Neither side has provided any information about this subsequent removal (i.e. – whether Defendant was subjected to further removal proceedings or criminally charged in connection therewith, etc.).

deported in such a manner that complied with due process." United States v. Taveras, 504 F. Supp. 3d 272, 278 (S.D.N.Y. 2020). A defendant may attack an illegal reentry charge by collaterally challenging the validity of the underlying removal order upon which the charge is predicated. United States v. Guzman, No. 19-cr-435, 2022 WL 17068800, at *3 (S.D.N.Y. Nov. 17, 2022) (citing United States v. Copeland, 376 F.3d 61, 66 (2d Cir. 2004)).

A noncitizen charged with illegal reentry may collaterally attack the validity of the underlying removal order if: (1) the defendant has exhausted the available administrative remedies; (2) the removal proceedings "deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Each of the statute's three requirements must be satisfied. See United States v. Palomar-Santiago, 141 S. Ct. 1615, 1620-21 (2021). In Palomar-Santiago, the Supreme Court rejected the Ninth Circuit's rule excusing defendants "from proving the first two requirements of § 1326(d) if they were not convicted of an offense that made them removable," because "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies…or was deprived of the opportunity for judicial review." Id. at 1620-21. "But the [Palomar-Santiago] Court didn't consider the effect of an invalid appeal waiver on an alien's burden to prove the first two prongs of § 1326(d)." United States v. Holmes, No. 21-cr-147, 2022 WL 1036631, at *4-5 (E.D.N.Y. Apr. 6, 2022) (citation omitted).

Accordingly, longstanding Second Circuit precedent – specifically the principles enunciated in Copeland, 376 F.3d at 61, United States v. Calderon, 391 F.3d 370 (2d Cir. 2004), and United States v. Sosa, 387 F.3d 131 (2d Cir. 2004), remain good law. See United States v. Contreras, No. 22-cr-129, 2023 WL 3569274, at *11 (S.D.N.Y. May 17, 2023). Through these cases, the Second Circuit has enunciated the standard for challenging an underlying deportation

order under Section 1326(d).  The Second Circuit instructs that:  (1) "'[a] failure to advise a potential deportee of a right to seek [discretionary relief from deportation] can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3),'" Calderon, 391 F.3d at 376 (quoting Copeland, 376 F.3d at 71); (2) an immigration judge's failure to inform the potential deportee of a right excuses Section 1326(d)(1)'s exhaustion requirement, where a noncitizen's waiver of administrative review was not "knowing and intelligent,'" id. at 374-75 (quoting Sosa, 387 F.3d at 136); and (3) there is no "realistic opportunity for judicial review" under Section 1326(d)(2) where the "waiver of the right to appeal is not knowing" due to the deportee being misinformed…."  Copeland, 376 F.3d at 68 & n. 6; accord Sosa, 387 F.3d at 137-38.  See also United States v. Gutierrez-Campos, No. 21-cr-40, 2022 WL 281582, at *19 (S.D.N.Y. Jan. 31, 2022) ("While the Second Circuit may decide to revisit its earlier decisions excusing section 1326(d)(1)'s administrative exhaustion requirement where the noncitizen's waiver of appeal was not knowing and intelligent, especially following Palomar-Santiago, the Court nevertheless must follow that precedent, which remains binding on this Court and all other district courts in this Circuit."); United States v. Ramos de la Rosa, No. 21-cr-210, 2021 WL 2784610, at *2 (S.D.N.Y. July 1, 2021) (applying knowing and intelligent waiver rule to administrative exhaustion requirement and excusing the requirement because the defendant's "waiver of his right to appeal was likely not knowing and intelligent").

**B.**   **Analysis**

Here, Defendant collaterally attacks his underlying removal order.  Section 1326(d)'s "requirements are conjunctive," meaning a defendant must satisfy all three requirements to succeed in his challenge to a removal order.  See Guzman, 2022 WL 17068800, at *3 (quoting United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002)).  Because the analysis of

its first two requirements is informed by the analysis of the third, the Court begins with an analysis of whether Defendant's removal order was fundamentally unfair.

1. Section 1326(d)(3): Fundamental Unfairness

Defendant initially asserts that the indictment should be dismissed based on the fundamental unfairness surrounding the underlying removal order and associated deportation proceeding, because Defendant was allegedly not removable for his prior convictions. To show fundamental unfairness, a noncitizen-defendant "must show both a fundamental procedural error and prejudice resulting from that error." Holmes, 2022 WL 1036631, at *5 (quoting Fernandez-Antonia, 278 F.3d at 159); see also United States v. Daley, 702 F.3d 96, 100 (2d Cir. 2012). For the following reasons, the Court concludes that Defendant has satisfied this two-step showing.

   a. Defendant Suffered from Fundamental Procedural Error

At the time of the removal proceeding, Defendant was a lawful permanent resident who was entitled to retain that status unless convicted of an offense that rendered him removable. See generally 8 U.S.C. § 1227(a)(2); 8 C.F.R. § 1.2. Moreover, Ms. Blackwood conceded that Defendant was "properly charged" under the three conviction-based grounds specified in the original and amended NTAs, and that the IJ ordered Defendant removed on that basis. The three conviction-based removal grounds were:

- 8 U.S.C. § 1227(a)(2)(C): Provides that "[a]ny alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device" (as defined in 18 U.S.C. § 921(a)) in violation of any law is deportable";

- 8 U.S.C. § 1227(a)(2)(A)(iii): Renders a noncitizen deportable for conviction of an "aggravated felony," specifically as defined by Section 1101(a)(43)(E)(ii) and (U), which define "aggravated felony" to include an "attempt" to commit "an offense described in . . . 18

U.S.C. §§ 922(g)(1)-(5), (j), (n), (o), (p), or (r) or 924(b) or (h) (relating to firearms offenses)…"; and

- 8 U.S.C. § 1101(a)(43)(B), (U):  The "aggravated felony" ground covering convictions for any "attempt" to commit "illicit trafficking in a controlled substance (as defined in section 21 U.S.C. § 802), including a drug trafficking crime (as defined in 18 U.S.C. § 924(c))."

(See ECF No. 20-3 at 21-22.)

Defendant now contends that none of his prior weapon or drug convictions triggered any of the above three grounds for removability.   The Court analyzes each prior conviction in turn.

### i.   *Defendant's Firearms Offenses*

Both the firearms removal grounds at 8 U.S.C. § 1227(a)(2)(C) and the category defined by 8 U.S.C. § 1101(a)(43)(E)(ii) contain precise predicate convictions that trigger removal. Section 1227(a)(2)(C) pertains to offenses that involve "a firearm or destructive device" as defined by 18 U.S.C. § 921(a), and the "aggravated felony" ground likewise covers offenses that are "described in" a list of federal gun statutes.  Each of these statutes applies to acts related to "firearm[s]" and relies on the federal definition of that term.   In determining whether a given state conviction triggers removal under these statutes, the Second Circuit requires that courts "'identify the minimum criminal conduct under [the state] statute by looking only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts.'"   Jack v. Barr, 966 F.3d 95, 97 (2d Cir. 2020) (quoting Hylton v. Sessions, 897 F.3d 57, 60 (2d Cir. 2018)); see also Williams v. Barr, 960 F.3d 68, 72-73 (2d Cir. 2020).

Under Second Circuit law, the Court must categorically compare the state definition at the time of the offense to the federal definition in effect at the time of the challenged removal order. Doe v. Sessions, 886 F.3d 203, 208 (2d Cir. 2018).   To this end, Defendant contends, and the Government concedes, that New York State's definition of a "firearm" is categorically broader

11

than the federal immigration law definition, because New York "criminalize[s] conduct involving loaded antique firearms, while the Immigration and Nationality Act's removal provisions exclude loaded antique firearms." Jack, 966 F.3d at 95; see also Guzman, 2022 WL 17068800, at *4 (dismissing illegal reentry indictment and noting with respect to firearms issue, that "the government concedes this point, as it must."). Based on the government's concession, the Court concludes that Defendant has established that his prior weapons offenses could not have properly served as the basis for the IJ's removability finding.

        ii.    *Defendant's Drug Trafficking Offense*

Defendant next asserts that the IJ erred when he concluded that Defendant's 1994 conviction for Attempted Criminal Sale of a Controlled Substance in the Third Degree rendered Defendant removable pursuant to 8 U.S.C. § 1101(a)(43)(B) and (U) for attempted "illicit trafficking in a controlled substance." (ECF No. 20-3 at 22.)

Again, the Court must categorically compare the definitions underlying Defendant's state drug trafficking conviction with their counterpart operative federal definitions. See Harbin v. Sessions, 860 F.3d 58, 61 (2d Cir. 2017); Guzman, 2022 WL 17068800, at * 5. Under Second Circuit law, the Court must categorically compare the state "controlled substance" definition at the time of the offense to the federal definitions in effect at the time of the challenged removal order. *Doe*, 886 F.3d at 208. Specifically, the aggravated felony ground requires conviction of an offense that relates to trafficking a federally defined "controlled substance." 8 U.S.C. §§ 1101(a)(43)(B). Moreover, because the statutory text "limits the meaning of 'controlled substance,' for removal purposes, to the substances controlled under [21 U.S.C.] § 802…, the Government must connect an element of the alien's conviction to a drug 'defined in [§ 802].'" Mellouli v. Lynch, 135 S. Ct. 1980, 1990-91 (2015); Harbin, 860 F.3d at 61 (holding that a state

12

drug conviction is not an "aggravated felony" if it proscribes more substances than are prohibited under the federal definition of a "controlled substance").

Based on this case law, the Court concludes – as multiple courts in this Circuit have similarly concluded – that the operative state and federal definitions implicated in Defendant's drug trafficking felony do not categorically align for purposes of removability.  Here, the New York state statutes under which Defendant was convicted in 1994 proscribe the attempted sale of a "narcotic drug."  See N.Y. Penal L. §§ 110.00, 220.39(1).  Under New York law, a "narcotic drug" includes a number of substances, including "cocaine."  N.Y. Penal L. § 220.00(7). The federal Controlled Substances Act likewise provides a definition for "cocaine."  See 21 U.S.C. § 802(6).  However, as courts in this Circuit have uniformly found, there is a categorical mismatch between the New York state and federal definitions of "cocaine," such that New York state convictions relating to "narcotic drugs" do not constitute removable offenses under federal immigration law.  See, e.g., Gutierrez-Campos, 2022 WL 281582, at *12-16 (analyzing the New York definition of "narcotic drug" and "cocaine" under New York law); Guzman, 2022 WL 17068800, at * 5 (same); Holmes, 2022 WL 1036631, *6-11 (same); United States v. Fernandez-Taveras, 511 F. Supp. 3d 367, 372 (E.D.N.Y. 2021) (same).

To this end, Defendant contends, and the Government again concedes, that the New York definition of "cocaine" is overbroad relative to the federal definition.  See Fernandez-Taveras, 511 F.3d at 374 ("As a result of the difference in the definitions of cocaine under New York law and federal law, possession of certain cocaine isomers is illegal under the New York statute but legal under the CSA.").  Accordingly, the Court concludes that Defendant has established that his prior drug offense could not have properly served as the basis for the IJ's removability finding.

b.  Defendant was Prejudiced by the Fundamental Procedural Error

Defendant contends that he was prejudiced by the fundamental procedural error that riddled his removal hearing, because – contrary to the IJ's findings, and as set forth above – the original and amended NTAs did not contain any removable offenses.  It is well-settled that a deportation "based on a state conviction that does not meet the federal standard for deportability is fundamentally unfair[.]"  Fernandez-Taveras, 511 F. Supp. 3d at 372; see also United States v. Moncrieffe, 167 F. Supp. 3d 383, 414 (E.D.N.Y. 2016) (finding unfairness and prejudice where "conclusion that defendant was deportable was based on a misapplication of the required categorical approach" and defendant "should not have been deemed deportable, and his immigration proceedings should have been terminated in his favor").  In this context, "prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted [relief from removal]."  Copeland, 376 F.3d at 73.

Here, Defendant was prejudiced by fundamental procedural errors, specifically the IJ's incorrect rulings on removability.  Indeed, had the IJ reached the proper conclusion, Defendant would neither have been ordered removed in the first place, nor would his due process rights have been violated.  Because Defendant's initial removal was obtained through such a violation, the Court concludes that it cannot support criminal liability under Section 1326(d).  See, e.g., Calderon, 391 F.3d at 376 (finding prejudice where counsel incorrectly advised defendant regarding a meritorious defense to removal and IJ concurred); Fernandez-Taveras, 511 F.3d at 372 (same).

2.  Section 1326(d)(1): Administrative Exhaustion

Pursuant to 8 U.S.C. § 1326(d)(1), Defendant must also show that he "exhausted any administrative remedies that may have been available to seek relief against the [removal] order."

14

It is undisputed that Defendant did not appeal the IJ's decision. Nevertheless, and as noted above, "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." Guzman, 2022 WL 17068800, at *5 (quoting Sosa, 387 F.3d at 136); see also Ramos de la Rosa, 2021 WL 2784610, at *2 ("[A] waiver is not voluntary, knowing, and intelligent when the IJ fails to explain to the defendant the consequences of the waiver or, where a defendant has a clearly established right to be informed about possible routes for challenging deportation, when the IJ fails to state the grounds for appeal the defendant might have.").

In Sosa, the Second Circuit held that a defendant need not comply with Section 1326(d)(1)'s mandatory statutory exhaustion requirement if the waiver was not knowing and intelligent. Sosa, 387 F.3d at 136. The Sosa court reasoned that while Section 1326(d)'s requirements were mandatory as a statutory matter, due process required that the Court excuse the exhaustion requirement when an alien's waiver of the right to appeal was not knowing and intelligent. Id. Determining whether a waiver is knowing and intelligent is "fact-specific." Guzman, 2022 WL 17068800, at *5 (quoting Ali v. Mukasey, 525 F.3d 171, 174 (2d Cir. 2008)).

Applying this case law, the Court excuses Defendant from complying with Section 1326(d)(1) because, as explained above, the IJ misled Defendant into believing that no relief was available by incorrectly telling him that he was subject to mandatory removal based on his New York state criminal convictions. This erroneous advice caused Defendant's waiver of his right to appeal to be invalid because it was not knowing and intelligent. See Copeland, 376 F.3d at 71; see also Holmes, 2022 WL 1036631, at *12-13 (defendant established that his waiver of his right to administrative appeal was not knowing and intelligent based on an IJ's statement to him that, if he had a drug conviction, "there would be absolutely no relief for [a final drug conviction] because

15

that is considered to be an 'aggravated felony'"). Defendant is thus excused from satisfying Section 1326(d)(1).

### 3. Section 1326(d)(2): Opportunity for Judicial Review

Under Section 1326(d)(2), Defendant must also show that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review." To this end, Defendant has made such a showing by demonstrating that he was deprived of his opportunity for judicial review under Section 1326(d)(2) because his waiver was not knowing and intelligent. See, e.g., Guzman, 2022 WL 17068800, at *6 (citing Copeland, 376 F.3d at 68, n. 6) ("Where waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review"); Sosa, 387 F.3d at 136 ("[A]n invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid.")). This showing, by itself, satisfies his burden under Section 1326(d)(2).

Here, the Court excuses Defendant from complying with Section 1326(d)(2). Specifically, Defendant has demonstrated that the same flaw in his removal proceedings that caused him to forego his administrative remedies also foreclosed his opportunity for judicial review. Multiple courts have previously recognized the relationship between Section 1326(d)'s first two prongs. See, e.g., Calderon, 391 F.3d at 3709 (An IJ's incorrect advice that a noncitizen is removable and ineligible for relief is a "procedural error so fundamental that it functionally deprives a [noncitizen] of judicial review."); Copeland, 376 F.3d at 68, n.6 ("Where waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review."). Defendant is thus excused from satisfying Section 1326(d)(2).

16

### III.     CONCLUSION

Upon consideration of the relevant factors, the Court finds that the removal order that supports this indictment is "fundamentally unfair," and cannot support Defendant's criminal liability under this single-count Indictment. Thus, Defendant's motion to dismiss is GRANTED, and the indictment is DISMISSED.

**SO ORDERED.**                                                              /s/ (JMA)
                                                                                           Hon. Joan M. Azrack
Dated:   June 16, 2023                                             United States District Judge
              Central Islip, New York

17